1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11     JOSHUAH MCCAVITT,                          No.  2:21-cv-00774 KJM KJN P

12                      Petitioner,

13           v.                                   ORDER AND FINDINGS &
                                                  RECOMMENDATIONS
14     PATRICK COVELLO,

15                      Respondent.

16

17     I.  Introduction

18           Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

19     habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his February 7, 2014

20     conviction for second degree murder and gross vehicular manslaughter.  Petitioner was sentenced

21     to an indeterminate term of 15 years to life in state prison, plus a consecutive determinate term of

22     two years for an out-on-bail enhancement.  Petitioner raises the following claims in his petition:

23     (1) insufficient evidence to support his conviction; (2) a Miranda violation; (3) illegal search and

24     seizure under the Fourth Amendment; (4) the government violated its duty to preserve evidence;

25     (5) the criminal statutes are unconstitutionally vague; (6) ineffective assistance of counsel; (7)

26     judicial bias; (8) prosecutorial misconduct; and (9) cruel and unusual punishment.  (ECF Nos. 1 &

27     8.)  After careful review of the record, this Court concludes that the petition should be denied.

28     This Court also orders that petitioner's request for judicial notice be denied.  (ECF No. 30.)

II. <u>Procedural History</u>

On February 7, 2014, a jury found petitioner guilty of second degree murder (Cal. Penal Code, sec. 187, subd. (a)) and gross vehicular manslaughter while intoxicated (Cal. Penal Code, sec. 191.5, subd. (a)). (ECF No. 27-2 at 80-81.) Before the jury reached a verdict, petitioner admitted the special allegation that he had been released on bail when he committed the offense pursuant to Cal. Penal Code section 12022.1. On April 7, 2014, petitioner was sentenced to 17 years to life in state prison. (ECF No. 27-2 at 193-95.)

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District. The Court of Appeal affirmed the conviction on December 2, 2016. (ECF No. 27-11.)

In September 2019, the El Dorado County Superior Court denied petitioner's petition for resentencing. (ECF No. 27-14.) He appealed, and the California Court of Appeal affirmed the order. (ECF No. 27-24.)

Petitioner filed a petition for review in the California Supreme Court, which the court denied on June 22, 2018. (ECF No. 27-13.) Petitioner then filed a petition for review regarding sentencing issues. (ECF No. 27-25.) The California Supreme Court granted review but deferred ruling on the issue until disposition of a related issue in <u>People v. Lewis</u>, S260598. (ECF No. 27-26.) The California Supreme Court later dismissed the matter. (ECF No. 27-27.)

Petitioner filed a state habeas petition in El Dorado County Superior Court, and the court denied the petition. (ECF No. 27-28.) He filed a petition in the California Court of Appeal, which was also court summarily denied. (ECF Nos. 27-29 & 27-30.) Petitioner filed state habeas petitions in the California Supreme Court, and the court denied the petitions. (ECF Nos. 27-31 to 27-38.)

Petitioner filed the instant petition on October 28, 2020. (ECF No. 1; <u>see also</u> ECF No. 8.) Respondent filed an answer on December 22, 2021. (ECF No. 24.) On February 3, 2022, petitioner filed a declaration in support of his reply and a request for judicial notice. (ECF No. 30.)

////

////

2

1   III.   Facts[1]

2           After independently reviewing the record, this Court finds the state appellate court's

3   summary accurate and adopts it herein.  In its unpublished memorandum and opinion affirming

4   petitioner's judgment of conviction on appeal, the California Court of Appeal provided the

5   following factual summary:

6           In September 2012, defendant left the Rusty Nail Saloon in Pollock
            Pines around 10:00 p.m. in his Chevy pickup and headed westbound
7           on Pony Express Trail toward his home that was located between
            Placerville and Coloma. While defendant apparently had only one
8           beer at the Rusty Nail, he had "a couple" beers at another bar a short
            distance away, the Pine Lodge Club, before heading to the Rusty Nail
9           for his final beer of the night. He also had "two to three" beers at
            another bar in Placerville, the Liars' Bench, before that. In addition
10          to the alcohol, defendant's system also contained
            tetrahydrocannabinol (THC), the principal psychoactive constituent
11          of marijuana, and alprazolam, a benzodiazepine sold under the
            proprietary name Xanax, both of which add to the intoxicating effects
12          of alcohol.

13          Meanwhile, Denise Caldwell and her husband, Scott, were driving
            eastbound on Pony Express Trail in separate vehicles. They were
14          heading to their home in Cedar Grove after meeting in Rancho
            Cordova for dinner earlier in the night. Caldwell was driving a
15          Subaru; her husband followed in a pickup truck about 50 yards
            behind. As Caldwell led their homebound caravan into a curve in the
16          roadway at a speed of 10 to 15 miles per hour, Scott heard a "horrific
            noise" that sounded like an explosion, saw a cloud of smoke in front
17          of him, and pulled his truck over to the side of the road. The sound
            Scott heard was his wife's Subaru being impacted head on by
18          defendant's Chevy truck as it came around the curve in the opposite
            direction. The force of the collision and height difference between
19          the vehicles caused the Chevy to drive over the front of the Subaru
            and embed itself into the front cabin where Caldwell was seated,
20          driving the Subaru backward, spinning the entangled vehicles
            perpendicular to the roadway, and then flipping them upside down,
21          Subaru on top of Chevy. Caldwell was killed nearly instantly.

22          Two El Dorado County Sheriff's deputies happened to be parked in
            their patrol cars about 150 yards away. Hearing what they also
23          described as an explosion, they immediately drove to the crash site.
            Defendant was crawling out of his truck when they arrived.
24          Caldwell's husband, who had run to the wreckage to find his wife's
            lifeless body upside down in the Subaru, was screaming and
25          appeared to be in shock. He lunged at defendant and had to be
            restrained by one of the deputies. Defendant, who smelled of alcohol,
26

27   [1]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate
     District in <u>People v. McCavitt</u>, No. C076173, 2016 WL 7030360 (Cal. App. Ct. Dec 2, 2016), a
28   copy of which was lodged by respondent as ECF No. 27-11.

1    was taken to one of the patrol cars by the other deputy.

2    CHP officers and emergency medical personnel arrived a short time
     later. After defendant was checked out by an emergency medical
3    technician, he was advised of his *Miranda*[] rights and questioned by
     CHP Officer Ian Hoey, who also noted defendant smelled of alcohol.
4    Defendant claimed he was heading home from Placerville. When
     Officer Hoey pointed out defendant was actually heading toward
5    Placerville from farther east, defendant briefly argued with the
     officer and then maintained he was heading home regardless of the
6    direction. Defendant also claimed he had one beer two or three hours
     before the collision at a bar in Pollock Pines or Cedar Grove. When
7    the officer explained that was near where they currently were,
     defendant appeared to be confused. Observing signs of intoxication,
8    Officer Hoey administered a field sobriety test that also indicated
     defendant was intoxicated. Two preliminary alcohol screening (PAS)
9    tests, administered four minutes apart, revealed a blood alcohol
     content of 0.118 percent and 0.12 percent, respectively.

10
     Defendant was arrested and transported to the hospital to be
11   medically cleared before being taken to jail. Officer Hoey
     accompanied defendant during the ride to the hospital. In the
12   ambulance, defendant admitted to "drinking more" than the one beer,
     although the officer did not say how much more. Defendant also
13   admitted to smoking marijuana earlier in the night. A blood sample
     taken at the hospital an hour after the collision was tested for the
14   presence of alcohol, revealing defendant's blood alcohol content was
     0.12 percent at the time of the blood draw and might have been as
15   high as 0.14 percent at the time of the collision due to the fact alcohol
     is eliminated from the bloodstream at an average rate of 0.02 percent
16   per hour. As previously mentioned, defendant's blood also contained
     THC and alprazolam.
17
     An analysis of the forensic evidence at the crash site revealed
18   defendant's Chevy entered the curve where the crash occurred at
     about 57 miles per hour, faster than the posted speed limit of 45 miles
19   per hour and nearly double the safe speed for taking that particular
     curve, causing one of the truck's tires to scuff the roadway. The
20   location of the scuff mark revealed defendant's Chevy was
     completely in Caldwell's lane as he came around the curve. In an
21   apparent attempt to avoid the collision, Caldwell slowed her Subaru
     to about 4 miles per hour and moved it to the outside of her lane just
22   before impact. Defendant's Chevy also slowed, but only to about 50
     miles per hour. Impact was head on, but slightly off center. As
23   mentioned, the Chevy essentially drove over Caldwell's Subaru,
     embedding itself into the front cabin and driving the Subaru
24   backward as the entangled vehicles spun around and flipped over,
     causing Caldwell's death.
25
26   (ECF No. 27-11 at 3-6.)

27   IV.    Standards for a Writ of Habeas Corpus

28          An application for a writ of habeas corpus by a person in custody under a judgment of a

                                            4

state court can be granted only for violations of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established Federal law" consists of holdings of the Supreme Court at the time of the last reasoned state court decision.  Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct."  Id.  Further, where courts of appeals have diverged in their treatment of an issue, there is no "clearly established federal law" governing that issue.  See Carey v. Musladin, 549 U.S. 70, 77

5

1     (2006).

2          A state court decision is "contrary to" clearly established federal law if it applies a rule

3     contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

4     precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

5     Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant

6     the writ if the state court identifies the correct governing legal principle from [the Supreme

7     Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."[2]

8     Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); see also Chia v.

9     Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, "a federal habeas court may not issue

10    the writ simply because that court concludes in its independent judgment that the relevant state-

11    court decision applied clearly established federal law erroneously or incorrectly.  Rather, that

12    application must also be unreasonable."  Williams, 529 U.S. at 411; see also Schriro v. Landrigan,

13    550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court,

14    in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state

15    court was '"erroneous"'").  "A state court's determination that a claim lacks merit precludes

16    federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state

17    court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v.

18    Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus

19    from a federal court, a state prisoner must show that the state court's ruling on the claim being

20    presented in federal court was so lacking in justification that there was an error well understood

21    and comprehended in existing law beyond any possibility for fair-minded disagreement."  Id. at

22    103.

23          If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

24    court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

25    527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

26    
27    [2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be
      overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
      presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,
28    384 F.3d 628, 638 (9th Cir. 2004)).

1    (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

2    § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

3    considering de novo the constitutional issues raised.").

4           The court looks to the last reasoned state court decision as the basis for the state court

5    judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

6    If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

7    previous state court decision, this court may consider both decisions to ascertain the reasoning of

8    the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

9    federal claim has been presented to a state court and the state court has denied relief, it may be

10   presumed that the state court adjudicated the claim on the merits in the absence of any indication

11   or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption

12   may be overcome by a showing "there is reason to think some other explanation for the state

13   court's decision is more likely."  Id. at 99-100.  Similarly, when a state court decision on

14   petitioner's claims rejects some claims but does not expressly address a federal claim, a federal

15   habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the

16   merits.  Johnson v. Williams, 568 U.S. 289, 298-301 (2013) (citing Richter, 562 U.S. at 98.  If a

17   state court fails to adjudicate a component of the petitioner's federal claim, the component is

18   reviewed de novo in federal court.  See, e.g., Wiggins v. Smith, 539 U.S. 510, 534 (2003).

19          Where the state court reaches a decision on the merits but provides no reasoning to

20   support its conclusion, a federal habeas court independently reviews the record to determine

21   whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

22   Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

23   review of the constitutional issue, but rather, the only method by which we can determine whether

24   a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no

25   reasoned decision is available, the habeas petitioner has the burden of "showing there was no

26   reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

27          A summary denial is presumed to be a denial on the merits of the petitioner's claims.

28   Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze

just what the state court did when it issued a summary denial, the federal court reviews the state court record to "determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 101.  It remains the petitioner's burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860 (citing Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006)).

V.  Petitioner's Claims

As a threshold matter, respondent argues that many of petitioner's claim are procedurally barred because of the contemporaneous objection rule or petitioner's failure to raise them on direct appeal.  (ECF No. 24 at 25-28.)  Although procedural issues are often addressed before the merits, they need not be.  The Supreme Court in Lambrix v. Singletary, 520 U.S. 518 (1997) skipped over the procedural bar argument and proceeded to the merits.  Id. at 525 ("Despite our puzzlement at the Court of Appeals' failure to resolve this case on the basis of procedural bar, we hesitate to resolve it on that basis ourselves."); see also Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (stating that courts may "reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar.").  "Procedural bar issues are not infrequently more complex than the merits issues" and "it may well make sense in some instances to proceed to the merits if the result will be the same." Franklin, 290 F.3d at 1232; see, e.g., Dean v. Schriro, 371 F. App'x 751 (9th Cir. 2010).  Because these claims can be resolved on the merits, this Court declines to decide whether a procedural bar precludes petitioner from obtaining habeas relief.

////

////

8

1    A. <u>Insufficient Evidence (Claim One)</u>

2         Petitioner claims that there was insufficient evidence to support his conviction in several

3    ways: (1) the accident reconstruction expert, Mr. Robert Snook, relied exclusively on Officer

4    Nett's written report; (2) the photographs of a single abrasion did not match either vehicle; (3)

5    there are conflicting reports regarding the speed of the victim's car at the time of impact; (4) there

6    is no signature on petitioner's prior DUI plea form; (5) there is no evidence that petitioner crossed

7    a double yellow line prior to the accident; and (6) there is no evidence that petitioner received a

8    "<u>Watson</u>" advisement pursuant to California Vehicle Code section 23593.  (ECF No. 19-20.)  In

9    response, respondent argues that these claims were either unsupported by the record or required

10   the state court to improperly draw inferences favorable to petitioner.  (ECF No. 24 at 16.)  Either

11   way, the state court reasonably rejected petitioner's insufficient evidence claim, contends

12   respondent.  The California Supreme Court summarily rejected petitioner's claim.

13        A petitioner is entitled to habeas corpus relief on a sufficiency of the evidence claim, "if it

14   is found that upon the record evidence adduced at the trial no rational trier of fact could have

15   found proof of guilt beyond a reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. 307, 324 (1979);

16   <u>see also</u> <u>Ngo v. Giurbino</u>, 651 F.3d 1112, 1115 (9th Cir. 2011).  This inquiry involves two steps.

17   First, the federal court must review the evidence in the light most favorable to the prosecution.

18   <u>Jackson</u>, 443 U.S. at 319.  If there are conflicting factual inferences, the federal court must

19   presume the jury resolved the conflicts in favor of the prosecution.  <u>Id.</u> at 326 ("[A] federal

20   habeas corpus court faced with a record of historical facts that supports conflicting inferences

21   must presume—even if it does not affirmatively appear in the record—that the trier of fact

22   resolved any such conflicts in favor of the prosecution, and must defer to that resolution.");

23   <u>McDaniel v. Brown</u>, 558 U.S. 120, 133 (2010) (per curiam).  Second, the federal court will

24   "determine whether the evidence at trial, including any evidence of innocence, could allow *any*

25   rational trier of fact to find the essential elements of the crime beyond a reasonable doubt."

26   <u>United States v. Nevils</u>, 598 F.3d 1158, 1165 (9th Cir. 2010) (en banc).

27        Although this Court's review is grounded in due process under the Fourteenth

28   Amendment, the <u>Jackson</u> standard "must be applied with explicit reference to the substantive

9

elements of the criminal offense as defined by state law."  Jackson, 443 U.S. at 324 n.16; Juan H. v. Allen, 408 F.3d 1262, 1275-76 (9th Cir. 2005).  This Court will look to state law to establish the elements of the offense and then turn to the federal question of whether the state court was objectively unreasonable in concluding that sufficient evidence supported that conviction.  See Johnson v. Montgomery, 899 F.3d 1052, 1056 (9th Cir. 2018).

"After AEDPA, we apply the standards of *Jackson* with an additional layer of deference."  Juan H., 408 F.3d at 1274; see Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam).  On direct appeal at the state level, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."  Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam).  On habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"  Id. (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

Petitioner was convicted of gross vehicular manslaughter while intoxicated, which California law defines as

> [T]he unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act that might produce death, in an unlawful manner, and with gross negligence.

Cal. Penal Code § 191.5(a).  California Vehicle Code section 23153(a) states that it is "unlawful for a person, while under the influence of any alcoholic beverage, to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver."  Additionally, California Vehicle Code section 23153(b) provides that it is "unlawful for

1   a person, while having 0.08 percent or more, by weight, of alcohol in his or her blood to drive a

2   vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in

3   driving the vehicle, which act or neglect proximately causes bodily injury to any person other

4   than the driver."

5         Here, the state court could have reasonably determined that there was sufficient evidence

6   to support petitioner's conviction.  Petitioner's six arguments are based on inaccurate

7   recollections of the record or an attempt to recast the evidence in his favor.  First, he claims that

8   Mr. Snook improperly based his opinion solely on Officer Nett's written report.  But at trial, Mr.

9   Snook testified that he reviewed the traffic collision report by Officer Nett in addition to the

10  actual traffic collision report by Officer Hoey, photographs taken by CHP officers, both vehicles,

11  and conducted his own dynamics analysis.  (See, e.g., ECF No. 27-5 at 93-98.)  Second, Mr.

12  Snook also found that there were matching abrasions on both vehicles at the place of impact.  (Id.

13  at 152.)  Third, in terms of the speed of the victim's car at the time of impact, Mr. Snook

14  determined that her car was traveling about 4 miles per hour, id. at 157, and her husband

15  estimated that she was driving "10, 15 miles an hour," ECF No. 27-3 at 74.  See Brown, 558 U.S.

16  at 133 (stating that a federal habeas court must view the evidence in a light most favorable to the

17  prosecution, including resolving any conflicting evidence in their favor).  Fourth, petitioner also

18  claims that the prior DUI form was unreliable because it was unsigned.  Yet he ignores the other

19  evidence admitted at trial that supports his prior DUI conviction, including his own stipulation

20  that he attended a DUI education class in Hawaii.  (See, e.g., ECF No. 27-2 at 131-33; ECF No.

21  27-5 at 35-39, 41-43.)  Fifth, despite claiming that there is no evidence that petitioner's vehicle

22  crossed the double yellow line, Mr. Snook testified that the tire scuff mark and the collision

23  occurred in the "eastbound lane, the opposite lane that [petitioner] was going."  (ECF No. 27-5 at

24  123; see also id. at 150.)  Lastly, Ms. Cigelske, a senior motor vehicle tech at the Department of

25  Motor Vehicles, testified that petitioner signed a form notifying him that if he drives under the

26  influence of alcohol and a person is killed, he could be charged with murder.  (ECF No. 27-6 at

27  34-37.)  Based on an independent review of the record, this Court concludes that the state court's

28  decision was not contrary to, or an unreasonable application of, clearly established Supreme

1    Court authority and recommends denying relief on this claim.

2         B.  Miranda Claim (Claim Two)

3         Petitioner claims that his statements to the police were not made voluntarily, knowingly,

4    or intelligently because he made them after a traumatic brain injury, while he was intoxicated, and

5    did not know his location.  (ECF No. 1 at 20-21.)  In response, respondent argues that the state

6    court reasonably rejected petitioner's Miranda claim; petitioner fails to show that he was coerced,

7    misled by the officers, or that his statements were involuntary.  (ECF No. 24 at 16.)

8         Before trial, petitioner's counsel filed a motion in limine to exclude his statements to the

9    officer.  (ECF No. 27-1 at 84-86.)  The trial court held a hearing on the issue and concluded that

10   petitioner "responded to the officer's questions, said that he understood all of his rights and was

11   waiving his rights.  So I'm going to allow it."  (ECF No. 27-3 at 44.)  The California Supreme

12   Court also summarily rejected petitioner's claim.

13        The Supreme Court has held that "the prosecution may not use statements, whether

14   exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it

15   demonstrates the use of procedural safeguards effective to secure the privilege against self-

16   incrimination."  Miranda v. Arizona, 384 U.S. at 436, 444 (1966).  "Prior to any questioning, the

17   person must be warned that he has a right to remain silent, that any statement he does make may

18   be used as evidence against him, and that he has a right to the presence of an attorney, either

19   retained or appointed."  Id.

20        A person may voluntarily, knowingly, and intelligently waive these rights.  Id.; see also

21   Oregon v. Elstad, 470 U.S. 298, 309 (1985).  This inquiry involves two steps.  First, waiver is

22   voluntary if "it was the product of a free and deliberate choice rather than intimidation, coercion,

23   or deception."  Moran v. Burbine, 475 U.S. 412, 421 (1986).  Second, "the waiver must have been

24   made with a full awareness of both the nature of the right being abandoned and the consequences

25   of the decision to abandon it."  Id.  In making this determination, courts consider the totality of

26   the circumstances surrounding the interrogation.  Id.  The government has the burden of proving

27   by a preponderance of the evidence that the accused's waiver meets the above criteria.  Colorado

28

12

1   v. Connelly, 479 U.S. 157, 168 (1986).  A person can waive their rights expressly with a written

2   or oral statement, or implicitly based on their actions or words.  North Carolina v. Butler, 441

3   U.S. 369, 373 (1979).  "An 'implicit waiver' of the 'right to remain silent' is sufficient to admit a

4   suspect's statement into evidence."  Berghuis v. Thompkins, 560 U.S. 370, 384 (2010) ("Where

5   the prosecution shows that a Miranda warning was given and that it was understood by the

6   accused, an accused's uncoerced statement establishes an implied waiver of the right to remain

7   silent."); see also United States v. Rodriguez, 518 F.3d 1072, 1080 (9th Cir. 2008); United States

8   v. Cazares, 121 F.3d 1241, 1244 (9th Cir. 1997).

9        Here, the state court could have reasonably concluded that petitioner validly waived his

10   Miranda rights.  There is no evidence that the officer intimidated, coerced, or misled petitioner

11   during their conversation.  Additionally, based on the evidence, petitioner was aware of the nature

12   and consequences of waiving his rights.  At the scene of the accident, an officer interviewed

13   petitioner.  (ECF No. 27-2 at 108-123.)  After asking petitioner for his name, age, and birthdate,

14   the officer read petitioner his Miranda rights.  After each statement, petitioner acknowledged that

15   he understood his rights.  (Id. at 112-13.)  The officer then asked "[h]aving those rights in mind,

16   are you willing to talk to me?" and petitioner answered "Yeah."  (Id. at 113.)  Before asking any

17   questions, the officer clarified

18           All right.  Well, the reason I gave – I read your Miranda is because you
19           obviously you don't have the ability to walk away right now; okay.  So
            technically you're not free to leave.  So because of that and I'm going to
20           ask you some questions, I wanted to make sure you're aware of your
            rights –
21

22   (Id. at 113.)  Petitioner again responded in the affirmative.  (Id.)  Petitioner told the officer that he

23   was driving his truck around a corner at about 45 miles an hour and crashed with a vehicle that

24   was driving in his lane.  (Id.)  Although he thought he was driving away from Placerville when

25   the accident occurred, he was actually driving towards Placerville.  (Id. at 114.)  Petitioner

26   admitted to having one beer about 2 to 3 hours before the accident and denied being on any

27   medication.  (Id. at 115-16.)  The officer administered a field sobriety test and, based on the

28

                                          13

1   results of the test and the death of the other driver, arrested petitioner for manslaughter.  (Id. at

2   117-22.)  In the ambulance, petitioner also admitted to drinking more than one beer.  (ECF No.

3   27-3 at 165.)

4          Petitioner argues that he could not validly waive his Miranda rights because he was

5   intoxicated and suffered a head injury when he was interviewed.  This Court disagrees.  The

6   Supreme Court has never held that impairments from drugs or alcohol negatively impact a

7   Miranda waiver.  See Matylinsky v. Budge, 577 F.3d 1083, 1095 (9th Cir. 2009); Adair v. Cates,

8   No. EDCV 09-1406-RSWL (JEM), 2012 WL 4846263, at *30 (C.D. Cal. Aug. 23, 2012),

9   adopting report and recommendation, 2012 WL 4513590 (C.D. Cal. Oct. 1, 2012).  Furthermore,

10  courts have found that evidence that the accused was alert and able to communicate is sufficient

11  to demonstrate the required level of comprehension to waive Miranda rights.  See, e.g., United

12  States v. Comstock, 443 F. App'x 310, 312 (9th Cir. 2011); Shackleford v. Hubbard, 234 F.3d

13  1072, 1080 (9th Cir. 2000); Castro v. Baker, No. 2:16-cv-01237-MMD-EJY, 2020 WL 592321, at

14  *20 (D. Nev. Feb. 6, 2020); United States v. Richards, No. CR 06-129-N-EJL, 2006 WL

15  3743807, at *2 (D. Idaho Dec. 18, 2006) (finding that waiver was valid despite the accused's

16  intoxication based on officers' testimony that the accused appeared to be "aware, responsive, and

17  coherent to their questions and voluntarily gave her consent" to be questioned).  Here, based on

18  the trial record outlined above, the state court reasonably concluded that petitioner was

19  sufficiently alert and able to communicate to validly waive his rights, despite his intoxicated state

20  and his head injury.  (ECF No. 27-2 at 108-123.)

21         Even if there was a Miranda error, the erroneous admission of defendant's testimony in

22  violation of the Fifth Amendment is subject to the harmless error analysis.  Neder v. United

23  States, 527 U.S. 1, 18 (1999); Ghent v. Woodford, 279 F.3d 1121, 1126 (9th Cir. 2002).  In

24  reviewing the prejudicial effect of the erroneous admission of testimony, the question is whether

25  the erroneously admitted evidence had a "substantial and injurious effect or influence in

26  determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Bains

27  v. Cambra, 204 F.3d 964, 977 (9th Cir. 2000).  In this case, petitioner's statements to the officer

28  were minimal in comparison to the other evidence of his guilt, including the blood test revealing

14

1   petitioner's blood content was 0.12 percent and contained THC and alprazolam, victim's husband

2   heard the accident, Chevy truck was embedded in the front cabin of the victim's Subaru, and

3   forensic analysis identified petitioner as speeding and driving on the wrong side of the road

4   before the collision.

5       This Court concludes that the state court's decision was not contrary to, or an

6   unreasonable application of, clearly established Supreme Court authority and recommends

7   denying relief on this claim.

8       C.   Fourth Amendment Search and Seizure Claim (Claim Three)

9       Petitioner claims that he did not consent to a blood alcohol test but was forced to undergo

10  this test in violation of his Fourth Amendment rights.  (ECF No. 1 at 22.)  In response, respondent

11  argues petitioner's Fourth Amendment claim is barred on federal habeas review because

12  petitioner had a full and fair opportunity to raise the claim in state court.  (ECF No. 24 at 37.)

13  The California Supreme Court summarily rejected petitioner's claim.

14      The Supreme Court has held that when a state court has provided petitioner with a full and

15  fair opportunity to litigate a Fourth Amendment claim, federal habeas relief is not available on the

16  ground that evidence obtained in an unconstitutional search or seizure was introduced at trial.

17  Stone v. Powell, 428 U.S. 465, 494-95 (1976).  The Ninth Circuit has determined that the

18  Supreme Court's holding in Stone v. Powell survived the passage of the Antiterrorism Effective

19  Death Penalty Act.  Newman v. Wengler, 790 F.3d 876, 880 (9th Cir. 2015) (per curiam).  On

20  habeas review, "[t]he relevant inquiry is whether petitioner had the opportunity to litigate his

21  claim, not whether he did in fact do so or even whether the claim was correctly decided."  Ortiz-

22  Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996); see also Moormann v. Schriro, 426 F.3d

23  1044, 1053 (9th Cir. 2005) (finding that petitioner had a full and fair opportunity to litigate his

24  Fourth Amendment claim because he raised the claim in a pre-trial motion, the trial court held a

25  hearing and denied his motion, and an appellate court reviewed the trial court's decision).

26      Here, petitioner had a full and fair opportunity to litigate his Fourth Amendment claim.

27  Under California law, a defendant can move to suppress evidence on the grounds that it was

28

obtained in violation of the Fourth Amendment.  See Lugo v. Borg, 81 F.3d 169 (9th Cir. 1996); Gordon v. Duran, 895 F.2d 610, 613-14 (9th Cir. 1990).  Although petitioner did not move to suppress the results of his blood alcohol test, he could have and fails to identify any deficiencies in California's procedure that denied him a full and fair opportunity to litigate his claim.  The Ninth Circuit has rejected habeas claims regarding non-consensual blood test following an arrest when petitioner had a full and fair opportunity to litigate the claim in state court.  See, e.g., Fain v. Borg, 52 F.3d 332 (9th Cir. 1995).  This Court concludes that habeas relief is not warranted on petitioner's Fourth Amendment claim.

      D.  Government Duty to Preserve Evidence (Claim Four)

Petitioner claims that the government violated its duty to preserve evidence by failing to provide defense counsel with three pieces of evidence: (1) petitioner's blood sample; (2) a broken weld on the axle from petitioner's vehicle; and (3) the black box from the victim's Subaru.  (ECF No. 1 at 22-24.)

In response, respondent argues that petitioner cannot prove the merits of the claim; he has not established that the government failed to preserve apparent exculpatory evidence or that the government's actions constitute bad faith.  Even if an error occurred, respondent contends that petitioner did not suffer any prejudice because his guilt for the charged offenses was proved by other evidence.  (ECF No. 24 at 40-41.)  The California Supreme Court summarily rejected petitioner's claim.

"The Due Process Clause of the Fourteenth Amendment requires the State to disclose to criminal defendants favorable evidence that is material either to guilt or to punishment." California v. Trombetta, 467 U.S. 479, 481 (1984).  Any constitutional duty of the States to preserve evidence is "limited to evidence that might be expected to play a significant role in the suspect's defense."  Id. at 488.  To state a claim that the government failed to affirmatively preserve evidence, petitioner has to prove two elements; first, the evidence had "exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means,"

id. at 489, and second, the police acted in bad faith in failing to preserve the evidence.  Arizona v. Youngblood, 488 U.S. 51, 58 (1988).

Petitioner claims that the government violated its duty to preserve evidence in three ways, which this Court discusses in turn below.

         i.    Blood Sample

Petitioner complains that, although DOJ toxicologist Nina Giorgi screen tested the blood sample for prescription drugs, her testing consumed the entire sample leaving none for defense counsel's independent analysis.  (ECF No. 1 at 23; see also ECF No. 27-6 at 5-15.)  He argues that the government deliberately collected an insufficient blood sample to prevent petitioner from conducting his own testing to impeach the state's witness.  (ECF No. 1 at 24.)  This claim fails for two reasons.  First, petitioner offers no evidence to support his claim of bad faith.  Second, even though the sample was not available to defense counsel, the Ninth Circuit has found that "[m]any other methods of challenging the results of a breathalyzer test are available to defendants, which makes the unavailability of breath or blood samples constitutionally acceptable."  Gundersen v. Anchorage, No. 91-36165, 1992 WL 207994, at *2 (9th Cir. Aug. 28, 1992) ("Although we recognize that in some cases it could prove valuable to a defendant to have an independent analysis of his blood or breath, Trombetta makes clear that the Constitution does not require the availability of those tests."); see also United States v. Torres-Casillas, No. 91-50544, 1992 WL 129436, at *1 (9th Cir. June 10, 1992).  Here, petitioner had the opportunity to challenge the government's test results by cross-examining witnesses at trial.  (ECF No. 27-4 at 205-17; ECF No. 27-5 at 225-29; ECF No. 27-6 at 14-15.)  This Court concludes that petitioner has not shown that the government violated its duty to preserve evidence of the blood sample.

         ii.    Broken Weld on Axle from Petitioner's Vehicle

Second, petitioner claims that the district attorney's investigator examined the vehicles for mechanical problems and found a broken weld on the axle of petitioner's vehicle.  Petitioner argues that his counsel was not given an equal opportunity to determine whether the damaged car part affected petitioner's ability to control his vehicle.  (ECF No. 1 at 23-24.)  This claim also cannot succeed.  Petitioner had a comparable opportunity to assess the vehicle's mechanical

1    problems by cross-examining the accident reconstruction witnesses at the trial.  (See ECF No. 27-

2    4 at 133-35; ECF No. 27-5 at 44-53, 160-90.)  Petitioner also does not provide any evidence that

3    the government withheld the damaged car part in bad faith.  As a result, this claim also does not

4    warrant habeas relief.

5              iii.    Subaru's Black Box

6         Lastly, petitioner asserts that the Subaru's black box was withheld from him.  (ECF No. 1

7    at 23.)   He states that this "single piece of evidence would have dramatically affected the

8    [outcome] of this case by conclusively establishing that Mr. Caldwell's testimony that he was

9    traveling between 10 to 15 MPH was false and misleading."  (Id. at 24.)  Like the others, this

10   claim falls flat.  Neither party had access to the Subaru's black box; a witness testified that

11   "Subaru has elected not to give that proprietary information out. So we could not access the black

12   box on the Subaru."  (ECF No. 27-5 at 105; see also id. at 171 (confirming that the officers were

13   unable to gather any information from the Subaru's black box.))  Petitioner, therefore, cannot

14   establish that the government acted out of bad faith by not turning over the black box.

15        This Court concludes that the state court's rejection of petitioner's failure to preserve

16   evidence claim was not contrary to, or an unreasonable application of, clearly established

17   Supreme Court authority and recommends denying habeas relief on this claim.

18        E.  Claim that Statutes are Void for Vagueness (Claim Five)

19        Petitioner claims that the statutes used to convict him under an implied malice theory and

20   gross vehicular manslaughter while intoxicated are vague and violate due process.  (ECF No. 1 at

21   25-27.)  In particular, he argues that while the average person knows driving under the influence

22   may result in the loss of their license, they do not know that if they drive under the influence and

23   get into an accident, killing a person, they could be convicted of murder.  (Id. at 26-27.)  In

24   response, respondent argues that the state court's decision rejecting this claim was reasonable.

25   (ECF No. 24 at 41.)

26        The Fifth Amendment states that "[n]o person shall … be deprived of life, liberty, or

27   property, without due process of law."  The Supreme Court has found that the government

28

                                                       18

1  violates this principle by "taking away someone's life, liberty, or property under a criminal law so

2  vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless

3  that it invites arbitrary enforcement." Johnson v. United States, 576 U.S. 591, 595 (2015) (citing

4  Kolender v. Lawson, 461 U.S. 352, 357-58 (1983)); see also Sessions v. Dimaya, 138 S. Ct. 1204,

5  1212 (2018).  To determine whether a statute gives fair warning, "the touchstone is whether the

6  statute, either standing alone or as construed, made it reasonably clear at the relevant time that the

7  defendant's conduct was criminal." United States v. Lanier, 520 U.S. 259, 267 (1997); see also

8  United States v. Kim, 449 F.3d 933, 942 (9th Cir. 2006) ("Thus, if a statute is not sufficiently

9  clear to provide guidance to citizens concerning how they can avoid violating it and to provide

10  authorities with principles governing enforcement, a defendant cannot be punished for violating

11  that statute.")

12         Here, petitioner was convicted of second degree murder under California Penal Code

13  section 187(a) and gross vehicular manslaughter while intoxicated under California Penal Code

14  section 191.5(a).  (ECF No. 27-2 at 80-81.)  Under California law, murder is defined as "the

15  unlawful killing of a human being, or a fetus, with malice aforethought."  Cal. Penal Code

16  § 187(a).  California law divides murder into first and second degree murder.  People v. Chun, 45

17  Cal. 4th 1172, 1181 (2009).  First degree murder is a willful, deliberate, and premeditated killing,

18  a killing committed during the commission of an enumerated list of felonies, or a killing that

19  involved an enumerated circumstance.  Cal. Penal Code § 189.  "All other kinds of murders are of

20  the second degree."  Cal. Penal Code § 189.  The required malice may be express or implied.

21  Cal. Penal Code § 188(a).  "Malice is express when there is manifested a deliberate intention to

22  unlawfully take away the life of a fellow creature."  Id. at § 188(a)(1).  On the other hand,

23  "[m]alice is implied when no considerable provocation appears, or when the circumstances

24  attending the killing show an abandoned or malignant heart."  Id. at § 188(a)(2).  California courts

25  have interpreted implied malice as having a physical and mental component.  Chun, 45 Cal. 4th at

26  1181.  The physical component is met when a defendant does "an act, the natural consequences of

27  which are dangerous to human life."  People v. Watson, 30 Cal. 3d 290, 300 (1981) (internal

28  quotation and citation omitted).  The mental component is met if defendant "knows that his

19

1  conduct endangers the life of another and … acts with a conscious disregard for life." Id.

2        California law defines gross vehicular manslaughter while intoxicated as

3            the unlawful killing of a human being without malice aforethought,
            in the driving of a vehicle, where the driving was in violation of
4            Section 23140, 23152, or 23153 of the Vehicle Code, and the killing
            was either the proximate result of the commission of an unlawful act,
5            not amounting to a felony, and with gross negligence, or the
            proximate result of the commission of a lawful act that might produce
6            death, in an unlawful manner, and with gross negligence.

7  Cal. Penal Code § 191.5(a).  Gross negligence is an objective test; "whether a reasonable person

8  in defendant's position would have been aware of the risks involved."  People v. Ochoa, 6 Cal.

9  4th 1199, 1204 (1993) (citation omitted).

10        This Court concludes that a state court could reasonably reject petitioner's argument that

11  the relevant statutes are unconstitutionally vague.  There is no clearly established Supreme Court

12  precedent finding that California's implied malice or gross negligence standards are

13  unconstitutionally vague.  To the contrary, courts that have reached this issue in the Ninth Circuit

14  have determined that California's second degree murder and gross vehicular manslaughter

15  statutes are not unconstitutionally vague.  See, e.g., Masoner v. Thurman, 996 F.2d 1003, 1007-08

16  (9th Cir. 1993); Callion v. Paramo, No. CV 16-4927-SJO (SP), 2013 WL 4676498, at *4 (C.D.

17  Cal. May 29, 2018), adopting report and recommendation, 2018 WL 4676911 (C.D. Cal. Sept. 25,

18  2018); Lopez v. Gastelo, No. 16-CV-00735-LAB (WVG), 2016 WL 8453921, at *4 (S.D. Cal.

19  Dec. 5, 2016) ("The Johnson decision has absolutely no applicability to the California murder

20  statute under which Petitioner was convicted and his reliance on Johnson is therefore

21  misplaced."), adopting report and recommendation, 2017 WL 902137 (S.D. Cal. Mar. 6, 2017);

22  Howard v. Campbell, No. CIV S-04-2414 FCD KJM P, 2007 WL 2601418, at *6 (E.D. Cal. Sept.

23  6, 2007), adopting report and recommendation, 2007 WL 2853860 (E.D. Cal. Sept. 27, 2007).

24  For these reasons, this Court recommends denying habeas relief on this claim.

25        F.   Ineffective Assistance of Counsel (Claim Six)

26        Petitioner claims that defense counsel was ineffective for failing to investigate the

27  following facts:  (1) discrepancy between Mr. Caldwell's phone and Mr. Caldwell's claim that he

28

1   ended the phone call before the accident; (2) level of hydrocodone in victim's body at time of the

2   accident; (3) potential jurors' exposure to news reports about the accident; (4) collection of

3   petitioner's blood sample without consent; (5) mechanical problems with both vehicles or call an

4   expert to rebut the prosecution's accident reconstruction witness; (6) discrepancies in alcohol

5   testing device and logs; (7) investigate how the paint marks on the accident pictures seemed to

6   change colors; (8) failure to suppress reference to petitioner's medicinal marijuana card and prior

7   marijuana conviction; (9) evidence that petitioner had mental illness; (10) failure to impeach

8   intoxicated witness Joey Padilla; (11) failure to make or argue pretrial motions including change

9   of venue, gag order, Pitchess motion, 995 motion, 1181 motion for new trial or mistrial, and

10  improper exclusion of Mrs. Caldwell's toxicology report; (12) failure to call lay and expert

11  witnesses to show that petitioner did not usually drive under the influence, and was, because of

12  preexisting conditions, careful to monitor his condition; (13) defense counsel coerced petitioner

13  into testifying against his will and restricted him to yes or no answers; and (14) failure to exclude

14  a juror whose brother was killed in a DUI accident.  (ECF No. 1 at 27-32; see also ECF No. 30.)

15  In response, respondent argues that the state court reasonably rejected petitioner's claims of

16  ineffective assistance of counsel.  (ECF No. 24 at 46-68.)  The California Supreme Court

17  summarily rejected all of these 14 subclaims in petitioner's state habeas petition.

18      To state an ineffective assistance of counsel claim, a defendant must show that (1) his

19  counsel's performance was deficient, falling below an objective standard of reasonableness, and

20  (2) his counsel's deficient performance prejudiced the defense.  Strickland v. Washington, 466

21  U.S. 668, 687-88 (1984).  For the deficiency prong, "a court must indulge a strong presumption

22  that counsel's conduct falls within the wide range of reasonable professional assistance; that is,

23  the defendant must overcome the presumption that, under the circumstances, the challenged

24  action 'might be considered sound trial strategy.'"  Id. at 689 (citation omitted).  For the prejudice

25  prong, the defendant "must show that there is a reasonable probability that, but for counsel's

26  unprofessional errors, the result of the proceeding would have been different.  A reasonable

27  probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

28      "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and

1    when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (internal citations

2    omitted); see also Landrigan, 550 U.S. at 473.  When § 2254(d) applies, the "question is whether

3    there is any reasonable argument that counsel satisfied Strickland's deferential standard."

4    Richter, 562 U.S. at 105.

5           1.  The Phone Call

6           Petitioner alleges that his counsel was deficient because he failed to investigate the

7    discrepancy between Mr. Caldwell's testimony that he hung up the phone when they exited the

8    freeway, and the evidence that the phone was being used when it was recovered after the

9    accident.  (ECF No. 1 at 28.)  Further, petitioner also contends that the car had a built-in hands

10   free device.  (Id.) He claims that both could have been mitigating evidence.  (Id.)

11          This Court concludes that that state court could have reasonably concluded that counsel's

12   performance was not deficient or prejudicial.  Although "counsel has a duty to make reasonable

13   investigations or to make a reasonable decision that makes particular investigations unnecessary,"

14   Strickland, 466 U.S. at 691, that duty is not limitless.  It is counsel's responsibility to "formulate a

15   strategy that was reasonable at the time and to balance limited resources in accord with effective

16   trial tactics and strategies."  Richter, 562 U.S. at 107.  A "decision not to investigate must be

17   directly assessed for reasonableness in all the circumstances, applying a heavy measure of

18   deference to counsel's judgments."  Strickland, 466 U.S. at 691.  "An attorney need not pursue an

19   investigation that would be fruitless, much less one that might be harmful to the defense."

20   Richter, 562 U.S. at 108.  When defense counsel excludes some issues in favor of others, courts

21   apply a strong presumption that counsel took those actions "for tactical reasons rather than

22   through sheer neglect."  Yarborough v. Gentry, 540 U.S. 1, 8 (2003).  Even if defense counsel

23   inadvertently excluded evidence, relief is not automatically warranted.  Id. at 8-9 ("The issues

24   counsel omitted were not so clearly more persuasive than those he discussed that their omission

25   can only be attributed to a professional error of constitutional magnitude.");  see also Cheney v.

26   Washington, 614 F.3d 987, 996 (9th Cir. 2010).  The inconsistency in evidence regarding when

27   Mr. Caldwell hung up his phone is irrelevant to whether petitioner committed second degree

28   murder or gross vehicular manslaughter while intoxicated.  Nor would this evidence have resulted

22

1   in a more favorable outcome for petitioner given the overwhelming evidence of his guilt.

2   Because the state court could have reasonably concluded that defense counsel's investigatory

3   omissions on this issue were not deficient or prejudicial, habeas relief is not warranted on this

4   claim.

5                   2.  Mrs. Caldwell's Toxicology Report

6         Next, petitioner claims that his counsel failed to argue that Mrs. Caldwell's toxicology

7   report should have been admitted in evidence to support his contributory negligence defense.

8   (ECF No. 1 at 28.)

9         Petitioner's argument contradicts the record.  Defense counsel made two requests to

10  introduce this evidence.  Defense counsel notified the state that he intended to "ask the husband

11  of the victim questions about the victim's blood results because those results showed the presence

12  of prescription drugs." (ECF No. 27-1 at 66.)  In response, the state filed a motion in limine to

13  exclude the evidence on the grounds that contributory negligence is not a defense to a criminal

14  charge and the evidence is legally irrelevant.  (Id. at 66-72.)  The trial court heard oral argument

15  and tentatively ruled to exclude the evidence.  (ECF No. 27-3 at 36-38.)  During the trial, Mr.

16  Caldwell testified that he was driving behind his wife and did not notice anything unusual about

17  her driving, and defense counsel cross-examined him.  (Id. at 69-75.)  Later in the trial, defense

18  counsel renewed his objection to admit the toxicology report from Mrs. Caldwell to show

19  comparative negligence, and the trial court denied the request.  (ECF No. 27-5 at 191-92.)  To the

20  extent petitioner is contending that his counsel was ineffective for failing to admit this evidence

21  for a third time, this claim fails.  The trial court had already rejected petitioner's attempts to

22  introduce to prove contributory negligence, and petitioner not demonstrated why it would succeed

23  on a third try.  Defense counsel cannot be ineffective for not raising a meritless argument.  See

24  Martinez v. Ryan, 926 F.3d 1215, 1226 (9th Cir. 2019); James v. Borg, 24 F.3d 20, 27 (9th Cir.

25  1994).  Because it was not objectively unreasonable for the state court to reject petitioner's

26  argument, this Court recommends denying habeas relief on this claim as well.

27                  3.  Media Coverage and Potential Jurors

28        Petitioner claims his defense counsel should have investigated potential juror bias based

1   on media coverage because he appeared in ten front-page news articles and "a [widespread]

2   Facebook campaign was launched against him." (ECF No. 1 at 28.)  He wanted counsel to

3   investigate potential bias by asking questions during voir dire, preparing a gag order, and taking

4   reasonable steps to ensure a fair trial. (Id.)  He claims that his counsel did none of these things,

5   denying him a fair and impartial jury trial. (Id.)

6        It is axiomatic that the Sixth Amendment guarantees criminal defendants the right to trial

7   by an impartial jury. Skilling v. United States, 561 U.S. 358, 377 (2010).  A juror's exposure to

8   news accounts of the crime alone, however, does not amount to a presumption that defendant was

9   denied due process. Id. at 380.  "Prominence does not necessarily produce prejudice, and juror

10  *impartiality*, we have reiterated, does not require *ignorance*."  Id. at 381; see also Irvin v. Dowd,

11  366 U.S. 717, 723 (1961) ("To hold that the mere existence of any preconceived notion as to the

12  guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a

13  prospective juror's impartiality would be to establish an impossible standard.  It is sufficient if a

14  juror can lay aside his impression or opinion and render a verdict based on the evidence presented

15  in court.").  Here, petitioner has not shown that the jurors were aware of the media coverage or

16  that they had preconceived notions of guilt or innocence of the accused.  At best, petitioner cites

17  to four newspaper articles from the Mountain Democrat dated between December 19, 2012, and

18  April 12, 2013, attached to a state habeas petition. (ECF No. 27-37 at 24-29.)  But these news

19  articles predate the trial by almost a year and merely report the facts surrounding his trial

20  proceedings.  Because petitioner failed to provide any evidence or actual or presumed juror bias

21  based on media coverage of the case, this Court concludes that it was not objectively reasonable

22  for the state court to deny this claim and recommends denying habeas relief.

23        4.   Additional Testing of Petitioner's Blood Sample

24        Petitioner argues that his counsel was ineffective for failing to challenge the collection of

25  his blood sample without his consent and to perform additional tests on the sample. (ECF No. 1

26  at 28-29.)

27        To succeed on an ineffective assistance of counsel claim based on a failure to raise motion

28  to suppress, petitioner must prove that his motion would have meritorious and a reasonable

1    probability that the jury would have reached a different verdict without the challenged evidence.

2    Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); see also Ortiz-Sandoval v. Clarke, 323 F.3d

3    1165, 1170 (9th Cir. 2003).  A meritorious Fourth Amendment claim is not enough; habeas

4    petitioners must also prove that their counsel's performance was deficient and prejudicial.

5    Kimmelman, 477 U.S. at 382.  "As is obvious, Strickland's standard, although by no means

6    insurmountable, is highly demanding."  Id.  Here, petitioner cannot prove either factor.  Counsel's

7    performance was not deficient because there is evidence that petitioner consented to the blood

8    sample.  (ECF No. 27-3 at 166, 170.)  Even assuming that counsel's performance was deficient,

9    petitioner cannot demonstrate a reasonable probability that the jury would have reached a

10   different verdict if the blood sample evidence had been excluded.  There was other evidence that

11   petitioner was intoxicated at the time the accident occurred.  For example, he admitted to drinking

12   one or two beers during the night, his eyes were "bloodshot and watery eyes," his speech was

13   slurred, and his horizontal gaze nystagmus and preliminary alcohol screening test results

14   indicated that he had consumed alcohol.  (ECF No. 27-3 at 148, 159-65.)  Counsel cannot be

15   deemed ineffective for failing to raise a futile motion.  Martinez, 926 F.3d at 1226; Borg, 24 F.3d

16   at 27.

17          Petitioner's second argument is that his counsel was ineffective for failing to retest his

18   blood sample.  As mentioned earlier, the state's testing consumed the entire sample leaving none

19   for defense counsel's independent analysis.  (ECF No. 1 at 23; see also ECF No. 27-6 at 5-15.)

20   Counsel has a duty to make reasonable investigations.  Strickland, 466 U.S. at 691.  But it is not

21   counsel's fault when the state's testing consumes the entire sample.  The record suggests that, had

22   the sample been available, defense counsel would have attempted to retest it.  (ECF No. 27-3 at

23   30 ("Unfortunately, the sample was consumed and I was unable to test it — or retest it."))

24   Instead, as this Court noted above, even though defense counsel was unable to run tests on the

25   sample, defense counsel had an opportunity to challenge the state's test results by cross-

26   examining witnesses at trial.  (ECF No. 27-4 at 205-17; ECF No. 27-5 at 225-29; ECF No. 27-6 at

27   14-15.)  This Court concludes that the state court could have reasonably rejected petitioner's

28   ineffective assistance of counsel claim on this issue and recommends denying relief.

1          5.   Failure to Investigate Mechanical Problems with Vehicles

2          Petitioner asserts that his defense counsel refused to investigate issues related to both

3   vehicles, namely:  (1) whether the vehicles had mechanical problems; (2) Subaru's recalls

4   regarding unintended acceleration, airbag deployment, and brakes; (3) failure to offer an accident

5   reconstruction expert or proposed witnesses for the defense; and (4) failure to present issues with

6   the state's reconstruction expert's report.  (ECF No. 1 at 29; see also id. at 31.)  After

7   independently reviewing the record, this Court concludes that it was not objectively unreasonable

8   for the state court to reject petitioner's ineffective assistance of counsel claim.

9          First, there is no evidence that the vehicles had mechanical problems. Craig Zaragoza, a

10   CHP officer trained in conducting mechanical vehicle inspections, testified that he inspected

11   petitioner's 1999 Chevy Silverado, including the tires, modified suspension, brake and reservoir

12   lines, steering, acceleration, and concluded that the vehicle did not have mechanical problems that

13   caused the collision.  (ECF No. 27-4 at 124-132.)  He also noted that although there was a ladder

14   bar installed on the rear axle with a ratchet strap wrapped around the axle tube and ladder bar, it

15   did not cause a mechanical problem.  (Id. at 132-33.)  Defense counsel cross-examined Zaragoza

16   about the raised suspension, and Zaragoza testified that it "affects the roll center, which would

17   mean that you would have to take sharp turns at a slower speed."  (Id. at 133-34.)  Defense

18   counsel also questioned Zaragoza about his inspection of the victim's Subaru, and Zaragoza

19   testified that he found no abnormalities.  (Id. at 135.)  Petitioner presents no evidence to support

20   his theory that either vehicle had mechanical problems.  His vague, unsupported claim that

21   defense counsel could have done more does not warrant habeas relief.  See Greenway v. Ryan,

22   856 F.3d 676, 680 (9th Cir. 2017); Borg, 24 F.3d at 26 ("Conclusory allegations which are not

23   supported by a statement of specific fact do not warrant habeas relief.")

24          Second, petitioner fails to cite to sufficient evidence that the victim's Subaru was subject

25   to manufacturer's recall notices.  To support his claim, petitioner cites to what appears to be an

26   excerpt from an expert report listing NHTSA documented complaints, investigations, recalls, and

27   technical services bulletins for 2012 Subaru Legacy as of January 30, 2013.  (ECF No. 27-37 at

28   6.)  But he provides no evidence that the victim's vehicle was subject to a recall that would have

26

1    caused the collision.  The cited report excerpt provides evidence to the contrary; it states that

2    "[n]one of the conditions specified by the search are alleged or believed to have been a causative

3    or contributory factor in the occurrence of the collision."  (Id.)  Based on this evidence, defense

4    counsel's performance was neither deficient nor prejudicial for not investigating this issue.

5           Lastly, petitioner faults his counsel for not engaging a reconstruction expert, calling other

6    witnesses, or presenting issues with the state's expert report.  (ECF No. 1 at 29.)  But it is an

7    attorney's decision whether to offer a witness at trial.  See Lord v. Wood, 184 F.3d 1083, 1095

8    (9th Cir. 1999) ("A witness's testimony consists not only of the words he speaks or the story he

9    tells, but also of his demeanor and reputation.").  Furthermore, this argument is also not supported

10   by the record.  Petitioner provides no evidence that an expert or the proposed witnesses would

11   have provided helpful testimony for his defense regarding how the accident occurred or to rebut

12   the state's expert's testimony or report.  Without such evidence, petitioner has failed to prove the

13   defense counsel was ineffective.  See Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000).  Based

14   on this Court's review of the record, instead of offering defense witnesses on accident

15   reconstruction, defense counsel made a tactical decision to cross-examine the state's accident

16   reconstruction witnesses.  (ECF No. 27-5 at 44-56 (cross-examination of Christopher Port); id. at

17   99-100, 160-90 (cross-examination of Robert Snook)).  This Court concludes that the state court's

18   rejection of petitioner's claim was not objectively unreasonable and recommends denying habeas

19   relief.

20           6.   Failure to Investigate Discrepancy with PAS Device

21           Petitioner argues that his defense counsel failed to investigate the discrepancy between the

22   serial number for the (a) PAS device used with (b) the device listed in the officer's police report.

23   (ECF No. 1 at 29.)  This argument is unsupported by the trial record, which demonstrates that

24   defense counsel thoroughly explored this issue in cross-examination.  Shawn Callaway, PAS

25   Coordinator for the Placerville area office, testified that he checked the accuracy of the PAS

26   device just before and after the accident.  (ECF No. 27-4 at 77-80.)  Defense counsel cross-

27   examined Callaway about discrepancy in the PAS device serial number listed in Officer Hoey's

28   report, and Callaway testified "[w]e did notice that the [PAS device] that was in [Officer Hoey's]

27

1   report was different from the serial number that we did have at the office." (Id. at 83 (testifying

2   that the device listed in the report "did not exist"); id. at 84 (stating that the serial number was off

3   by one number)).  Despite this error, Callaway was certain that the accuracy log he testified to

4   was connected with the relevant accident.  (Id. at 84.)  Ian Hoey, the officer who conducted the

5   PAS device test at the accident scene, testified that he misprinted the serial number from his

6   notes.  (ECF No. 27-3 at 152.)  When he administered the test, the device was working properly.

7   (Id. at 154-55 (But they make this machine foolproof.  If the machine isn't working properly, it

8   will not operate."))  The PAS device maintains an internal record of the results, which can be

9   printed out.  (ECF No. 27-4 at 5.)  Officer Hoey also testified that printed test results are

10  "consistent and accurate" with the times, dates, and results from petitioner's PAS tests.  (Id. at 6.)

11  Based on the record, this Court finds no evidence to supported petitioner's claim that defense

12  counsel's performance was deficient or prejudicial for not further addressing the PAS serial

13  number discrepancy.  Because such efforts would have been cumulative and futile, the state

14  court's denial of petitioner's claim was not objectively unreasonable, and relief is unwarranted.

15         7.  Failure to Investigate Paint Marks

16         Next, petitioner claims that his counsel was deficient for failing to independently

17  investigate why the paint marks on the accident photos appear to change color.  (ECF No. at 30.)

18  Petitioner states that defense counsel instead asked the district attorney, who "offered an

19  explanation harmful to the defense."  (Id.)  "Petitioner later learned, but could not get the

20  evidence developed to prove, that three or four other accidents occurred at this same location in

21  that same year."  (Id.)

22         This claim fails.  As petitioner admits, he has no evidence to support his theory that the

23  accident photos included evidence from other collisions.  To the contrary, the trial evidence

24  contains a reasonable inference that all the different paint marks pertain to the relevant accident

25  scene.  Witnesses testified that they use orange spray paint at collision investigation scenes,

26  including this accident scene.  (ECF No. 27-4 at 6-7; ECF No. 27-5 at 99, 117-18.)  When the

27  state's reconstruction expert Robert Snook went back to the scene to conduct his analysis, "the

28  orange spray paint marks that Officer Nett had put on the pavement were still there."  (ECF No.

28

27-5 at 118.)  To verify that Snook collected all the marks, he used a different paint spray over the orange spray marks.

> [T]he standard procedure is we used a different color over the top. So
> when we would take a measurement to one of Officer Nett's orange spray
> paint marks, we put green or blue on top of that orange. Now, the orange
> mark wouldn't show orange anymore. It would show as blue. And this
> allowed us to make sure that we had collected all the physical evidence
> that the officer had talked about.

(Id.)  Exhibit 64, which plaintiff cites, actually disproves his theory and confirms Snook's testimony.  (Id. at 118-19 ("In People's 64, this is a photograph taken of the collision scene itself. It was taken after the fact. This was during our analysis when we went back out in May."))  This Court concludes that the state court's rejection of the claim was reasonable and recommends denying habeas relief.

8.   Failure to Suppress References to Medical Marijuana Card and Prior Conviction

Petitioner argues that his counsel should have moved to suppress references to his medicinal marijuana card and his prior conviction for sales of marijuana, and that this evidence is inadmissible.  (ECF No. 1 at 30.)

This Court concludes that the state court's rejection of his claim was not objectively unreasonable.  Contrary to petitioner's argument, defense counsel moved to exclude this evidence in a motion in limine.  (ECF No. 27-1 at 78-81.)  The state wanted to use this evidence to show his "personal knowledge of the effect of marijuana on his person and that is directly relevant to his knowledge of how he would be affected if he drove with marijuana in [] his system."  (Id. at 99-100.)  Specifically, the state intended to introduce an August 13, 2012 tape recorded statement by petitioner explaining to an El Dorado County Deputy Sheriff how much marijuana he uses daily, the amount of time it takes to feel the effect, and how marijuana makes him feel tired.  (Id. at 100.)  Based on those admissions, petitioner plead guilty to one felony count of Health Safety Code section 11359, Possession of Marijuana for Sale.  (Id.)  To use that evidence in this case, the trial court found that an EC 402 hearing may be needed and later found the evidence admissible.  (Id. at 264; ECF No. 27-3 at 29-32.)  At trial, an officer testified that petitioner admitted to

smoking marijuana around 6:00 p.m. before the accident.  (<u>Id.</u> at 164, 177-78.)  Because it was clear that petitioner was impaired by alcohol, "[t]he fact that he may have also been under the influence of drugs wasn't my prime concern."  (ECF No. 27-4 at 62.)

Even after the evidence was deemed admissible, defense counsel attempted to mitigate the impact of this evidence by requesting a limiting instruction before Detective Palmberg's testimony.  Based on defense counsel's request, the trial court instructed the jury that

> You're going to be hearing some testimony in just a moment, and this testimony is being offered to you for a very limited purpose. You are only going to use this testimony for the purpose of determining the issue of [petitioner's] knowledge of the effects of marijuana on himself and the use of marijuana on this particular date.

(ECF No. 27-4 at 151-52.)  Detective Palmberg, an El Dorado County Deputy Sheriff, testified about his August 2012 conservation with petitioner regarding petitioner's use of marijuana and its effects on him.  (<u>Id.</u> at 153-61.)  Defense counsel cross-examined Detective Palmberg on these issues.  (<u>Id.</u> at 162-67.)  Petitioner's mere suggestion that defense counsel could have done more is insufficient to demonstrate that defense counsel's performance was deficient or prejudicial.   As a result, this Court concludes that the state court's rejection of this claim was reasonable and recommends denying relief.

### 9.  Failure to Present Evidence of Mental Illness

Next, petitioner claims that defense counsel ignored evidence that he suffered from schizophrenia and asked for the psychiatrist in jail.  (ECF No. 1 at 30.)  Petitioner asserts that counsel only moved to change his plea after his brother brought evidence of his mental illness at sentencing.  (<u>Id.</u>)

A criminal defendant has a constitutional right not to be convicted while he is incompetent to stand trial.  <u>Cooper v. Oklahoma</u>, 517 U.S. 348, 354 (1996); <u>Pate v. Robinson</u>, 383 U.S. 375, 378, 385 (1966) (concluding that based on the evidence of mental illness introduced at trial, defendant was entitled to a hearing on his competency to stand trial).  To undergo a criminal trial, an accused person must have "the capacity to understand that nature and object of the proceedings

1  against him, to consult with counsel, and to assist in preparing his defense….”  <u>Drope v.</u>

2  <u>Missouri</u>, 420 U.S. 162, 171 (1975).  “[E]vidence of a defendant's irrational behavior, his

3  demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in

4  determining whether further inquiry is required, but that even one of these factors standing alone

5  may, in some circumstances, be sufficient.”  <u>Id.</u> at 180.  “Counsel's failure to move for a

6  competency hearing violates the defendant's right to effective assistance of counsel when 'there

7  are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the

8  defendant's competency, and there is a reasonable probability that the defendant would have been

9  found incompetent to stand trial had the issue been raised and fully considered.'”  <u>Stanley v.</u>

10  <u>Cullen</u>, 633 F.3d 852, 862 (9th Cir. 2011) (citing <u>Jermyn v. Horn</u>, 266 F.3d 257, 283 (3d Cir.

11  2001)).

12        Based on an independent review of the record, this Court finds that there is insufficient

13  evidence of petitioner's incompetence during the guilt phase to justify a conclusion that defense

14  counsel was ineffective in failing to move for competency hearing or to further investigate

15  petitioner's mental health.  Defense counsel learned of the issue the morning before sentencing

16  and brought it to the court's attention.  <u>See</u> <u>Simon v. Gastelo</u>, 697 F. App'x 903, 905 (9th Cir.

17  2017)).  Defense counsel informed the court that petitioner's brother told him that petitioner was

18  housed at a psychiatric health facility and was treated for schizophrenia a few weeks before the

19  accident.  (ECF No. 27-6 at 223.)  Defense counsel subsequently asked petitioner about his

20  mental health, and petitioner told him that he heard voices and was medicated.  (<u>Id.</u>)  He did not

21  disclose this information because “[n]obody asked.”  (<u>Id.</u>)  Defense counsel did not ask petitioner

22  about his history of mental illness before because “I didn't think he did.”  (<u>Id.</u>)  In opposition to

23  the defense counsel's motion for a continuance, the state argued “[h]e's been completely lucid

24  during the trial, so I don't think there's any issue that would have impacted our trial.  Counsel

25  obviously spoke with him, and there hasn't been an issue so far.”  (<u>Id.</u> at 224.)  The trial court

26  denied the motion, noting that defense counsel can file a writ if he determines there is a basis to

27  do so.  (<u>Id.</u> at 226.)  The record contains no evidence that counsel knew or should have known of

28  petitioner's mental health history.  <u>See</u> <u>Dixon v. Ryan</u>, 932 F.3d 789, 803 (9th Cir. 2019);

1  <u>Williams v. Pliler</u>, 171 F. App'x 688, 692 (9th Cir. 2006).  The state court, therefore, was not

2  objectively unreasonably in denying this Sixth Amendment claim.

3          10. Failure to Impeach Joey Padilla

4          Petitioner claims that a state's witness, Joey Padilla, was intoxicated during his testimony

5  "yet defense counsel failed to exclude him as a witness."  (ECF No. 1 at 31.)  He also asserts that

6  his counsel failed to impeach Padilla on his criminal record.  (Id. at 31-32.)

7          First, as to petitioner's claim that Padilla was intoxicated during his testimony, petitioner

8  has not identified any evidence to support his argument.  As mentioned above, conclusory,

9  unsupported statements do not warrant habeas relief.

10          Second, as to petitioner's claim that defense counsel was ineffective for failing to impeach

11  a witness, this claim also fails.  "Trial management is the lawyer's province," which includes

12  deciding "'what arguments to pursue, what evidentiary objections to raise, and what agreements

13  to conclude regarding the admission of evidence.'"  <u>McCoy v. Louisiana</u>, 138 S. Ct. 1500, 1508

14  (2018) (citation omitted).  Other decisions are reserved for the client, including "whether to plead

15  guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal."  Id.  Here,

16  the state disclosed Padilla's criminal record to defense counsel.  (ECF No. 27-4 at 3-4.)  Despite

17  his lengthy criminal record, the court and counsel identified one misdemeanor conviction from

18  2005 that could be used for impeachment.  (ECF No. 27-5 at 59-63.)  Petitioner has not

19  demonstrated that defense counsel's failure to impeach Padilla with this remote misdemeanor

20  conviction constitutes deficient performance.  Nor has he shown that this impeachment evidence

21  could have reasonably resulted in a different outcome.  <u>See Davis v. Woodford</u>, 384 F.3d 628,

22  641-42 (9th Cir. 2004).  This Court concludes that it was objectively reasonable for the state court

23  to reject petitioner's claim for ineffective assistance of counsel on these grounds.

24          11. Failure to File Pretrial Motions

25          Petitioner asserts that his counsel failed or refused to prepare pretrial motions including

26  change of venue based on media coverage, a gag order, a Pitchess motion, a Penal Code section

27  995 motion, and a Penal Code section 1181 motion for a new trial or mistrial.  (ECF No. 1 at 31.)

28          As stated above, to succeed on a <u>Strickland</u> claim for failing to file a motion, in addition to

showing the counsel was deficient and prejudicial, petitioner must show that "(1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him." Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999) (citing Kimmelman, 477 U.S. at 373-75). Here, besides outlining which motions his counsel should have filed, petitioner provides no basis or facts to support this claim. Without evidentiary support, petitioner has failed to show that the trial court would have granted these motions as meritorious, or that, had the trial court granted the motions, the jury's verdict would have been more favorable to him. Wilson, 185 F.3d at 990. This Court finds that the state court's rejection of this claim was not objectively unreasonable and recommends denying habeas relief.

12. Failure to call Character Witnesses

Next, petitioner asserts that his counsel failed to call character witnesses to explain that he does not usually drive drunk and monitored his condition due to a preexisting condition. (ECF No. 1 at 31.)

Counsel is not necessarily deficient for failing to include all arguments or evidence that would have supported the defense. See Yarborough v. Gentry, 540 U.S. at 7. "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." Id. at 8. Based on the record here, the state court could reasonably conclude that petitioner has failed to rebut that presumption for a few reasons. First, petitioner does not identify exactly what the witnesses' testimony would have been. Vague, unsupported assertions do not warrant habeas relief. See Greenway, 856 F.3d at 680; Borg, 24 F.3d at 26. Second, defense counsel took steps to limit any bad propensity evidence and, as a result, may have made the tactical decision to avoid calling attention to any character evidence. (See, e.g., ECF No. 27-5 at 33-34.) Third, petitioner testified that because of his previous DUI, he tries not to get drunk when he needs to drive. (ECF No. 27-6 at 62; see also at 59-62, 84 (testifying that he smokes or ingests medicinal marijuana for his bad back.)) Lastly, defense counsel submitted character statements in mitigation for sentencing. (ECF No. 27-27 at 33-43.)

1          13. Coercion into Testifying Against Petitioner's Will

2          Petitioner claims that counsel coerced him into testifying and forced him to limit his

3   answers to "yes" or "no." (ECF No. 1 at 31.)  He also states that the trial court reinforced this

4   mandate by ordering petitioner to limit his responses or be removed from the courtroom.  (Id.)

5          The decision to testify on one's own behalf is reserved for the accused.  McCoy, 137 S.

6   Ct. at 1508.  But here, the record offers no support for petitioner's claim.  See, e.g., Reumont v.

7   Ylst, No. 92-55700, 1993 WL 77217, at *5 (9th Cir. 1993).  Petitioner provided thorough

8   responses during his testimony, including that he was driving in his lane when the accident

9   occurred. (ECF No. 27-6 at 58-94.)  This testimony was helpful to defense counsel's theory of

10  the case. (Compare id. at 92-94 with id. at 200-02.)  The record contains no evidence that

11  petitioner did not want to testify or that he was being coerced to only use one word answers.

12  Plaintiff cites one record excerpt, but it does not support his argument that the trial court asked

13  him to limit his responses or be removed from the courtroom.  Instead, it shows that the trial court

14  admonished him for asking questions to the prosecutor during cross-examination. (ECF No. 27-6

15  at 93 ("Mr. McCavitt, don't ask questions. Okay? ... Just answer his questions.  Your attorney will

16  ask you questions if he wants to clarify something.  Okay?")  Based on the record, this Court

17  finds that it was not objectively unreasonable for the state court to deny petitioner's claim.

18          14. Failure to Exclude Jury Member

19          Lastly, petitioner argues that defense counsel failed to exclude for cause a jury member

20  whose brother was killed in a DUI accident. (ECF No. 1 at 31.)  He alleges that counsel refused

21  his request to have the jury member removed. (Id.)  In response, respondent argues that defense

22  counsel's performance was neither deficient nor prejudicial. (ECF No. 24 at 67.)

23          This claim fails.  "Judicial scrutiny of counsel's performance must be highly deferential."

24  Strickland, 466 U.S. at 689.  "Because of the difficulties inherent in making the evaluation, a

25  court must indulge a strong presumption that counsel's conduct falls within the wide range of

26  reasonable professional assistance…."  Id.  Defense counsel's failure to inquire beyond the

27  court's voir dire does not make his performance deficient.  See Floyd v. Filson, 949 F.3d 1128,

28  1143 (9th Cir. 2020); Wilson, 185 F.3d at 991 (holding that counsel's decision not to inquiry

34

about certain topics in voir dire given the jurors' commitment to remain impartial "merits

deference as a tactical decision").  Furthermore, establishing prejudice "in the context of juror

selection requires a showing that, as a result of trial counsel's failure to exercise peremptory

challenges, the jury panel contained at least one juror who was biased." Davis v. Woodford, 384

F.3d 628, 643 (9th Cir. 2004); see also Ybarra v. McDaniel, 656 F.3d 984, 1001 (9th Cir. 2011);

United States v. Quintero-Barraza, 78 F.3d 1344, 1349 (9th Cir. 1995).  Petitioner has not

provided any evidence that this juror harbored bias towards him.  The trial court instructed the

jury to base the verdict "only the evidence presented during the trial in this court and the law as I

provide it to you."  (ECF No. 27-3 at 55; see also ECF No. 27-6 at 123 ("Do not let bias,

sympathy, prejudice, or public opinion influence your decision.  Bias includes, but is [] not

limited to, bias for or against the witnesses, attorneys, defendants, or alleged victims, based on

disability, gender, nationality, national origin, race or ethnicity, religion, gender identity, sexual

orientation, age, or socioeconomic status."))  It is axiomatic that a jury is presumed to follow the

trial court's instructions.  Weeks v. Angelone, 528 U.S. 225, 234 (2000).  There is no evidence to

rebut that presumption here.  This Court finds that the state court's denial of this claim was not

objectively unreasonable and recommends denying habeas relief on this claim.

G.  Judicial Bias (Claim Seven)

Petitioner claims that the trial judge had a potential bias against petitioner, evidenced by

(1) not excusing the potential juror whose brother was killed in the DUI accident, (2) excluding

the victim's toxicology report, (3) admitting propensity evidence, (4) failing to issue a gag order

on media coverage of the trial, and (5) providing misleading jury instructions on what constitutes

inherent dangerousness to human life.  (ECF No. 1 at 33.)  In response, respondent argues that the

California Supreme Court's rejection of these claims was reasonable.  (ECF No. 24 at 68-69.)

The Constitution protects a person's right to an "impartial and disinterested tribunal in

both civil and criminal cases."  Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980).  A petitioner

claiming judicial bias must overcome the "presumption of honesty and integrity" on behalf of the

judge.  See Withrow v. Larkin, 421 U.S. 35, 47 (1975).  In particular, "judicial rulings alone

almost never constitute a valid basis for a bias or partiality motion." <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." <u>Id.</u> "A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." <u>Id.</u> at 556.

The Supreme Court has identified only three circumstances where the appearance of bias warrants recusal: (1) the judge has a financial interest in a case's outcome; (2) the judge has a conflict arising from his participation in an earlier proceeding; and (3) the judge becomes "embroiled in a running, bitter controversy" with one of the litigants. <u>Caperton v. A.T. Massey Coal Co.</u>, 556 U.S. 868, 877-80 (2009); <u>Mayberry v. Pennsylvania</u>, 400 U.S. 455, 465 (1971); <u>see also</u> <u>Crater v. Galaza</u>, 491 F.3d 1119, 1131 (9th Cir. 2007). Petitioner's challenges do not fall into any of these three categories. Instead, he merely complains about the outcomes of ordinary courtroom proceedings. Such challenges are "proper grounds for appeal, not for recusal." <u>Liteky</u>, 510 U.S. at 555. The state court's rejection of petitioner's judicial bias claim was not objectively unreasonable, and this Court recommends denying habeas relief on claim seven.

H. <u>Prosecutorial Misconduct (Claim Eight)</u>

Petitioner claims that the prosecutor committed misconduct in the following ways: (1) violated verbal commitment not to impeach petitioner with prior speeding infractions; (2) improper impeachment with an alleged DUI that occurred more than five years ago and did not contain proper signatures; (3) use of extremely inflammatory photographs of victim being removed from the vehicle; (4) abuse of preemptory challenges by trying to identify individuals willing to use "logic and common sense to decide the case"; (5) knowingly allowed an intoxicated witness to testify and illicit fabricated testimony; (6) secured Joey Padilla's testimony through legal deal with his girlfriend; (7) destroyed or neglected to preserve exculpatory evidence; (8) colluding with accident reconstruction expert and reports; and (9) prosecutor "testified" for the

1    victim in closing argument.  (ECF No. 1 at 33-37.)  In response, respondent argues that the state

2    court's rejection of these claims was not contrary to, or an unreasonable application of, clearly

3    established Supreme Court precedent.  (ECF No. 24 at 69-83.)  The California Supreme Court

4    summarily rejected petitioner's claim.

5            In reviewing the prosecutor's alleged misconduct, "[t]he relevant question is whether the

6    prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a

7    denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (Donnelly v.

8    DeChristoforo, 416 U.S. 637, 643 (1974)); see also Parker v. Matthews, 567 U.S. 37, 45 (2012)

9    (per curiam).  "[I]t 'is not enough that the prosecutors' remarks were undesirable or even

10   universally condemned.'"  Darden, 477 U.S. at 181 (citation omitted).  "[A] court should not

11   lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or

12   that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less

13   damaging interpretations."  Donnelly, 416 U.S. at 647.  In making its determination, the court

14   should consider the prosecutor's comments in the context of the entire trial record.  Hein v.

15   Sullivan, 601 F.3d 897, 912-13 (9th Cir. 2010).  "[T]he Darden standard is a very general one,"

16   and courts, therefore, have "'more leeway . . . in reaching outcomes in case-by-case

17   determinations.'"  Parker, 567 U.S. at 48 (quoting Alvarado, 541 U.S. at 664).  Even if there was

18   prosecutorial misconduct, habeas relief is only warranted if petitioner can establish that the error

19   "'had substantial and injurious effect or influence in determining the jury's verdict.'"  Brecht v.

20   Abrahamson, 507 U.S. 619, 637 (1993) (citation omitted); see also Parle v. Runnels, 387 F.3d

21   1030, 1044 (9th Cir. 2004).

22            1.  Impeachment with Speeding Infractions

23            Petitioner claims that the prosecutor violated a verbal commitment to defense counsel that

24   he would not impeach petitioner with prior speeding infractions.  (ECF No. 1 at 34.)  He contends

25   that the prosecutor broke this agreement, using El Dorado County speeding infractions to

26   impeach petitioner despite the fact that these infractions "were redacted and the jury [was]

27   instructed not to consider them."  (Id.)  Respondent disagrees, arguing that the record refutes

28   petitioner's claim.  (ECF No. 24 at 71-74.)

1          After reviewing the record, this Court agrees with respondent that the record does not

2    support petitioner's claim.  Although defense counsel filed a motion in limine to exclude evidence

3    of petitioner's prior speeding citations, ECF No. 27-1 at 81-83, prosecutor filed a motion in

4    limine to admit this evidence, id. at 93, 104.  The trial court heard argument on this issue and

5    tentatively ruled that the evidence could be admitted with a limiting instruction.  (ECF No. 27-3

6    at 23-29 ("And it's my understanding that the purpose that this is going to be offered is to show

7    that Mr. McCavitt in the past has suffered adverse consequences as a result of speeding, that he

8    therefore would appreciate the dangerousness and the recklessness of the unlawful conduct."))

9    During trial, the court twice overruled defense counsel's objections to admit evidence of

10   petitioner's prior speeding infractions.  (ECF No. 27-5 at 41-42; ECF No. 27-7 at 33.)  Prosecutor

11   cross examined petitioner about the speeding offenses.  (ECF No. 27-6 at 89-92.)  The trial court

12   provided the following limiting instruction to the jury:

13
14          The People presented evidence that the Defendant committed other
            offenses that are not charged in this case, i.e., driving under the influence
15          and speeding. You may consider this evidence only if the People have
            proved by a preponderance of the evidence that the Defendant committed
16          the uncharged offenses.

17          …

18          If you decide that the Defendant committed the uncharged offenses, you
            may, but are not required to, consider that evidence of the limited purpose
19          of deciding whether or not the Defendant, one, acted with implied malice;
            two, acted with gross negligence; and, three, acted [] to show his
20          knowledge.

21   (ECF No. 27-6 at 135-36.)  The jury is presumed to follow the instructions.  Weeks, 528 U.S. at

22   234.  Petitioner has not identified any record cites to support his claim that the prosecutor made

23   an oral commitment not to use this evidence.  An unsupported allegation is insufficient to warrant

24   habeas relief.  Borg, 24 F.3d at 26.  This Court concludes that the state court's rejection of his

25   claim was not objectively unreasonable and recommends denying this claim.[3]

26   _____

27   [3] Petitioner also takes issue with the redactions on the speeding tickets.  Because petitioner agreed
     to admit the enhancement that he was out on bail when the accident occurred, the court approved
     the parties' request to redact portions of the tickets that reflect the outstanding charge.  (ECF No.
28   27-6 at 118-19.)

1            2.  Impeachment with Prior DUI Conviction

2         Next, petitioner states that prosecutor erred by using his prior DUI that was more than five

3 years old and without proper signatures.  (ECF No. 1 at 34.)  The relevant prior DUI occurred in

4 2006 in Hawaii, and petitioner admitted to the charges.  (ECF No. 27-36 at 168-71.)

5         After reviewing the record, this Court concludes that the state court's rejection of

6 petitioner's claim was not objectively unreasonably.  Defense counsel filed a motion in limine to

7 exclude the prior DUI conviction while prosecutor requested to admit it.  (ECF No. 27-1 at 80-81,

8 93.)  The trial court heard argument and tentatively ruled that the prior DUI conviction was

9 admissible.  (ECF No. 27-3 at 21-23.)  During trial, the parties stipulated that petitioner had a

10 prior DUI and agreed to a limiting instruction that the evidence was relevant to petitioner's

11 knowledge of effects of driving under the influence.  (ECF No. 27-5 at 33-34.)  The trial court

12 gave the following limiting instruction:

13
14         Ladies and gentlemen, we have certain rules of evidence, and one of the
rules of evidence is that some prior issues cannot be considered for
purposes of showing an individual's propensity to commit an existing act.
15         In other words, you cannot consider the fact that Mr. McCavitt was
convicted of DUI in Hawaii to conclude that, well, he must have been
16         DUI in this particular case. You can, however, consider the effect of that
conviction with respect to the classes that he took as to his knowledge of
17         the dangerousness or the consequences of driving while intoxicated. So
you can't simply conclude that, well, he did it before, so he must have
18         done it this time. But you can use the information from the class and from
the conviction to consider whether or not Mr. McCavitt had knowledge of
19         the dangerousness and the consequences of driving while impaired.
20

21 (ECF No. 27-5 at 43.)  To the extent petitioner is now contesting the authenticity of the prior DUI

22 conviction records, this challenge fails.  The cited records contain his signatures, and petitioner

23 does not specify which signatures are missing.  (ECF No. 27-36 at 168-71.)  Without more

24 evidence, an unsupported statement does not warrant habeas relief.

25         To the extent that petitioner challenges the admission of this evidence under state law,

26 habeas relief is unavailable.  This issue is a matter of state law and is not cognizable on habeas

27 review.  See Estelle, 502 U.S. at 67-68; Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir.

28

1   2009); see also Horton v. Mayle, 408 F.3d 570, 576 (9th Cir. 2005).  Errors of state law do not

2   warrant federal habeas relief.  See Estelle, 502 U.S. at 67-68; Johnson v. Sublett, 63 F.3d 926,

3   930 (9th Cir. 1995).  The erroneous admission of evidence is grounds for federal habeas corpus

4   relief only if it made the state proceedings so fundamentally unfair as to violate due process.  See

5   Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991).

6          Assuming the claim is cognizable, "[u]nder AEDPA, even clearly erroneous admissions of

7   evidence that render a trial fundamentally unfair may not permit the grant of federal habeas

8   corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme

9   Court."  Holley, 568 F.3d at 1101; see also Walden v. Shinn, 990 F.3d 1183, 1204 (9th Cir.

10  2021); Nava v. Diaz, 816 F. App'x 192, 193 (9th Cir. 2020).  Because the Supreme Court has not

11  clearly decided whether the admission of prior DUI conviction for knowledge of effects of drunk

12  driving constitutes a due process violation sufficient to warrant habeas relief, this Court cannot

13  conclude that the state court's ruling was contrary to, or an unreasonable application of, clearly

14  established federal law.  See Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per curiam);

15  Jennings v. Runnels, 493 F. App'x 903, 906 (9th Cir. 2012); Alberni v. McDaniel, 458 F.3d 860,

16  866 (9th Cir. 2006); Bradford v. Paramo, No. 2:17-cv-05756 JAK JC, 2020 WL 7633915, at *6-7

17  (C.D. Cal. Nov. 12, 2020) (citing cases), adopting report and recommendation, 2020 WL

18  7631441 (C.D. Cal. Dec. 22, 2020).  Even if the petitioner managed to surpass the clearly

19  established law issue, given the trial evidence summarized above, the admission of his prior DUI

20  conviction did not have a substantial and injurious effect on the jury's verdict.  Brecht, 507 U.S.

21  at 623.  This Court determines that the state court's decision was reasonable and recommends

22  finding that relief is unavailable on this claim.

23          3.   Inflammatory Photos of Victim

24          Petitioner argues that the "prosecution used extremely inflammatory photographs of the

25  victim being removed from the vehicle, claiming they were being used to lay the foundation for

26  future testimony" but failed to do so.  (ECF No. 1 at 34.)

27          After reviewing the record, this Court concludes that petitioner's claim lacks merit.

28  During trial, the prosecutor told the court that he was "attempting to have this officer lay the

40

1   foundation for some photographs" and requested that they be admitted into evidence and

2   published before the jury.  (ECF No. 27-3 at 136.)  Defense counsel objected to some

3   photographs that showed the victim in the vehicle.  (Id. at 137.)  In response, the prosecutor

4   provided the following explanation:

5           [S]ome of those pictures are being introduced because we're going
            to have a reconstruction expert on tomorrow. One of the things he's

6           going to base his opinion on is not only damage to the vehicles but
            also injuries to persons involved in the vehicles.

7
            We're trying to show the best collision dynamics we can. Obviously,

8           in any vehicle accident, there are gruesome photos. We tried to pick
            out the cleanest ones we could ahead of time. There are 100 photos

9           that are worse than the ones that the Court is looking at that we're
            not seeking to introduce. So we attempted to cull through those pretty

10          well just to get to this point.

11   (Id. at 137-38.)  The trial court admitted some and excluded others.  (Id. at 138-41.)  During trial,

12   an officer testified that the photos accurately depicted the scene.  (Id. at 179-81.)  The accident

13   reconstruction expert testified that he partially relied upon scene photographs to complete his

14   investigation.  (ECF No. 27-5 at 94, 144.)  To the extent petitioner is attempting to challenge the

15   state court's admission of these photographs, the state court's determination that this evidence

16   was admissible is binding on this federal habeas court.  See Estelle, 502 U.S. at 67-68.  This

17   Court concludes that the state court's rejection of this claim was reasonable and recommends

18   denying habeas relief.

19          4.  Use of Peremptory Challenges

20          Next, petitioner claims that prosecutor abused his peremptory challenges by using

21   deceptive tactics to "identify persons willing to use logic and common sense to decide the case."

22   He provides an example of a potential juror who identified herself a mathematician.

23          The prosecution presented her with an illogical question that defied
            basic mathematical [principles] followed by the supposition that if

24          the law said the opposite of what she knew to be factually correct
            what would she say. She, obviously, said the law would be wrong

25          and needed to be changed. Then she followed with a question of her
            own, something to the effect that shouldn't this be a vehicular

26          manslaughter charge. He thereupon dismissed her rather than rely on
            the Court to instruct her on the law.

27
     (ECF No. 1 at 34-35.)

28

                                            41

1    The Supreme Court has only identified one substantive control over the use of a

2    peremptory challenge.  Specifically, the Equal Protection Clause of the Fourteenth Amendment

3    prohibits litigators from exercising peremptory challenges on the basis of race.  Batson v.

4    Kentucky, 476 U.S. 79, 86 (1986); see also People v. Wheeler, 22 Cal. 3d 258 (1978). To

5    determine whether a peremptory strike was discriminatory, courts apply a three-part inquiry:

6          First, a defendant must make a prima facie showing that a
           peremptory challenge has been exercised on the basis of race;
7          second, if that showing has been made, the prosecution must offer a
           race-neutral basis for striking the juror in question; and third, in light
8          of the parties' submissions, the trial court must determine whether
           the defendant has shown purposeful discrimination.
9

10   Davis v. Ayala, 576 U.S. 257, 270 (2015) (quoting Snyder v. Louisiana, 552 U.S. 472, 476–77

11   (2008)).  Although peremptory challenges reinforce a defendant's right to an impartial jury, "we

12   have long recognized, as well, that such challenges are auxiliary; unlike the right to an impartial

13   jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional

14   dimension."  United States v. Martinez-Salazar, 528 U.S. 304, 311 (2000).

15          Here, petitioner does not claim that the prosecutor used peremptory challenges on the

16   basis of race.  Even if he did, petitioner must establish a prima facie case of racial discrimination.

17   Purkett v. Elem, 514 U.S. 765, 767 (1995) (per curiam).  There is no evidence to support that

18   position, and the voir dire transcripts are not available for this court to consider on habeas review.

19   (ECF No. 35.)  The state court's denial of this claim was not objectively reasonable and habeas

20   relief is not warranted.

21          5.   Use of Intoxicated Witness to Fabricate Testimony

22          Petitioner argues that the prosecutor knowingly placed an intoxicated witness on the stand

23   to present fabricated testimony and then reinforced this testimony "with the knowingly false

24   testimony that the responding deputy took the petitioner out of his truck from the passenger side,

25   testimony obviously refuted by the dash-cam video showing the passenger side of the truck with

26   completely pulverized."  (ECF No. 1 at 36.)

27          "[A] conviction obtained by the knowing use of perjured testimony is fundamentally

28

1    unfair, and must be set aside if there is any reasonable likelihood that the false testimony could

2    have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976)

3    (footnotes omitted); see Napue v. Illinois, 360 U.S. 264, 269 (1959).  To state a successful claim,

4    petitioner must show that (1) the testimony was false, (2) the prosecutor knew or should have

5    known that the testimony was false, and (3) the false testimony was material.  United States v.

6    Zuno-Arce, 339 F.3d 886, 889 (9th Cir. 2003); see also Hayes v. Brown, 399 F.3d 972, 984 (9th

7    Cir. 2005) (en banc).  A witness testifying under oath commits perjury if the witness "gives false

8    testimony concerning a material matter with the willful intent to provide false testimony, rather

9    than as a result of confusion, mistake, or faulty memory."  United States v. Dunnigan, 507 U.S.

10   87, 94 (1993).

11         Petitioner's challenges regarding the two witnesses' testimony fails.  First, he claims that

12   the prosecutor knew Joey Padilla was drunk and testified falsely.  As stated above, there is no

13   evidence to support his claim that the prosecutor knew Padilla was drunk or that the testimony

14   was false.  Even if petitioner could prove those elements, he has not shown that the testimony was

15   material.  Second, petitioner claims that an officer falsely testified that he removed petitioner

16   from the passenger side of the truck.  (ECF No. 27-3 at 81.)  Assuming that this testimony was

17   false, and the prosecutor should have known it was false, this testimony was not material.

18   Petitioner even claims that the testimony was refuted by the dash-cam video.  (See, e.g., ECF No.

19   1 at 35.)  Furthermore, how petitioner was extracted from his truck after the collision has no

20   bearing on whether he committed the charged offenses.  Because fairminded jurists could

21   reasonably agree that the prosecutor did not knowingly use false testimony to secure a conviction,

22   habeas relief is not warranted.

23              6.  Legal Deal to Secure Witness Testimony

24         Petitioner also claims that the prosecution made a secret deal with Joey Padilla to secure

25   his testimony.  Specifically, he claims the prosecutor promised to reduce criminal charges against

26   Joey Padilla's girlfriend in exchange for Padilla's testimony in this case.  (ECF No. 1 at 35-36.)

27   Although the prosecutor informed defense counsel of the deal during a trial recess, petitioner now

28   states that this conversation should have been confirmed before the court.  (Id.)  This claim lacks

1    merit.  Petitioner has not identified nor is this Court aware of any evidence to support his claim.

2    Conclusory allegations that are not supported by statements of fact do not warrant habeas relief.

3    Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995); Borg, 24 F.3d at 26.  This Court recommends

4    denying relief on this claim as well.

5                        7.   Failure to Preserve Exculpatory Evidence

6            Petitioner argues that the prosecutor "destroyed, caused to be destroyed or neglected to

7    secure exculpatory evidence in order to bolster his own case in chief." (ECF No. 1 at 36.)  He

8    provides the following three examples:  (1) failed to produce the Subaru's black box, (2) failed to

9    preserve petitioner's blood sample for additional testing, and (2) presented misleading

10   breathalyzer logs.  (Id.)  This challenge merely restates arguments petitioner raised above.  For

11   the same reasons previously discussed, there is insufficient evidence to support petitioner's

12   assertion that these examples amount to prosecutorial misconduct.

13                       8.   Colluding with Accident Reconstruction Expert

14           Next petitioner claims that there was a possibility of collusion because the accident

15   reconstruct report and testimony was based on the police reports rather than independent

16   scientific work.  (ECF No. 1 at 36.)  This claim also merely restates an earlier argument.  After

17   reviewing the evidence, this Court concludes that Mr. Snook's testimony and report was based on

18   several sources including Officer Nett's traffic collision report, Officer Hoey's traffic collision

19   report, photographs taken by CHP officers, both vehicles, and Mr. Snook's own dynamics

20   analysis.  (See, e.g., ECF No. 27-5 at 93-98.)  Petitioner has failed to identify any evidence to

21   support his collusion theory and, therefore, relief is not warranted.

22                       9.   Improper Closing Argument

23           Lastly, petitioner claims that the prosecutor improperly testified for the victim during

24   closing arguments when he explained why the victim did not use her brakes or her thoughts upon

25   seeing petitioner's headlights before the collision.  (ECF No. 1 at 36-37.)

26           This Court concludes that the state court's rejection of petitioner's claim was not objectively

27   unreasonable.  Closing arguments are "seldom carefully constructed in toto before the event;

28   improvisation frequently results in syntax left imperfect and meaning less than crystal clear."

                                                  44

Donnelly, 416 U.S. at 646-47.  The Supreme Court has cautioned that "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."  Id. at 647.  "Prosecutors and defense lawyers are given 'wide latitude' in closing arguments."  Hein, 662 F.3d at 538 (citation omitted).  Here, in closing arguments, the prosecutor argued "[t]he bright lights were on. Last thing Denise Caldwell saw were those bright lights. She slowed her vehicle down. She tried to get to the right part of her lane."  (ECF No. 27-6 at 177.)  In rebuttal closing arguments, the prosecutor argued "[s]he's going slow. 10 or 15? I don't know. That's what the witnesses say. We know from physics she's going about 6 or 7 miles an hour."  (Id. at 208.)  He explained that the victim didn't slam on her brakes because petitioner was going too fast, and her last thoughts must have been wondering what was going on while staring into petitioner's headlights.  (Id.)  In the context of the trial record, these comments did not infect the trial with unfairness to constitute a denial of due process.  Prosecutor's closing remarks are based on evidence regarding the speed of the victim's car and the position of the cars before impact.  To mitigate any chance of error, the trial court also instructed the jury that "[n]othing the attorneys say is evidence."  (ECF NO. 27-6 at 126 ("In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence."))  The state court's rejection of petitioner's prosecutorial misconduct claim was not objectively unreasonable, and this Court recommends denying habeas relief.

I.   Cruel and Unusual Punishment Claim (Claim Nine)

Finally, petitioner claims that his sentence constitutes cruel and unusual punishment under the Eighth Amendment.  (ECF No. 1 at 37-39.)  In response, respondent argues that a fairminded jurist could agree with the state court's rejection of this claim.  (ECF No. 24 at 83-85.)

The Eighth Amendment states "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  "The final clause prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed."  Solem v. Helm, 463 U.S. 277, 284 (1983).  Courts are guided by objective factors in determining

1   whether a sentence is cruel and unusual punishment, including "(i) the gravity of the offense and

2   the harshness of the penalty; (ii) the sentences imposed on other criminals in the same

3   jurisdiction; and (iii) the sentences imposed for commission of the same crime in other

4   jurisdictions." <u>Helm</u>, 463 U.S. at 292.  Although Supreme Court jurisprudence in this area has

5   been unclear, "one governing legal principle emerges as 'clearly established' under § 2254(d)(1):

6   A gross disproportionality is applicable to sentences for terms of years."  <u>Lockyer v. Andrade</u>,

7   538 U.S. 63, 72 (2003).  The gross disproportionality principle is only triggered in the

8   "exceedingly rare" and "extreme" case.  <u>Id.</u>; <u>Ewing v. California</u>, 538 U.S. 11, 23 (2003) ("The

9   Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it

10  forbids only extreme sentences that are 'grossly disproportionate' to the crime.")

11          This Court concludes that the state court's rejection of petitioner's cruel and unusual

12  punishment claim was not objectively unreasonable.  Petitioner was convicted of second degree

13  murder and gross vehicular manslaughter while intoxicated.  (ECF No. 27-2 at 80-81.)  The trial

14  court sentenced him to 17 years in state prison.  (ECF No. 27-2 at 193-95.)  This sentence is not

15  grossly disproportionate to his crimes.  <u>See Ewing</u>, 538 U.S. at 30 (affirming sentence for 25

16  years under three strikes law for shoplifting three golf clubs); <u>Hutto v. Davis</u>, 454 U.S. 370, 372

17  (1982) (per curiam) (affirming sentence to two consecutive terms of 20 years for possession with

18  intent to distribute nine ounces of marijuana and distribution of marijuana); <u>Rummel v. Estelle</u>,

19  445 U.S. 263, 265-66, 285 (1980) (affirming life without parole sentence under recidivist statute

20  for obtaining $120.75 by false pretenses).  Courts have concluded that a life sentence for murder

21  is not cruel and unusual punishment.  <u>See, e.g.</u>, <u>Solem</u>, 463 U.S. at 290, n.15; <u>Harris v. Wright</u>, 93

22  F.3d 581, 585 (9th Cir. 1996) (stating that mandatory life imprisonment without parole "[l]ike any

23  other prison sentence, [] raises no inference of disproportionality when imposed on a murderer");

24  <u>United States v. LaFleur</u>, 971 F.2d 200, 211 (9th Cir. 1991) ("Under <u>Harmelin</u>, it is clear that a

25  mandatory life sentence for murder does not constitute cruel and unusual punishment.")

26  Logically then, a sentence for 15 years for second degree murder and gross vehicular

27  manslaughter plus 2 years for out-on-bail enhancement does not run afoul with the Eighth

28  Amendment.  Habeas relief is not warranted for this claim either.

1    VI.   Request for Judicial Notice

2              In reply to respondent's answer, petitioner filed a request for judicial notice.  (ECF No.

3    30.)  He requests that this Court take judicial notice of exhibits attached to his reply and his

4    habeas petition.  (Id. at 10.)  Federal Rule of Evidence 201(b) provides that a federal court may

5    take judicial notice of an adjudicative fact "that is not subject to reasonable dispute" if the fact

6    "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

7    readily determined from sources whose accuracy cannot reasonably be questioned."  Petitioner

8    has not explained how these exhibits satisfy this standard.  To the extent that petitioner now

9    presents new evidence, this Court may only review the record that was before the state court

10   when it adjudicated the habeas claims on the merits.  Cullen v. Pinholster, 563 U.S. 170, 185

11   (2011).  To the extent that petitioner's exhibits are excerpted from the record, this Court has

12   considered the entire record in evaluating the pending petition and need not take judicial notice of

13   these exhibits to do so.  This Court denies petitioner's request for judicial notice.

14   VII.  Conclusion

15             Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

16   habeas corpus (ECF Nos. 1 & 8) be denied.

17             Furthermore, IT IS HEREBY ORDERED that petitioner's request for judicial notice (ECF

18   No. 30) be denied.

19             These findings and recommendations are submitted to the United States District Judge

20   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

21   after being served with these findings and recommendations, any party may file written

22   objections with the court and serve a copy on all parties.  Such a document should be captioned

23   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

24   he shall also address whether a certificate of appealability should issue and, if so, why, and as to

25   which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

26   applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

27   § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

28   service of the objections.  The parties are advised that failure to file objections within the

47

specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

F.2d 1153 (9th Cir. 1991).

Dated:  November 30, 2022

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/TAA/mcca0774.157

48